AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br>Mokrane MIMOUN<br><br>*Defendant(s)* | Case No. 6:24-mj-00001-HBK |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 31st, 2023__ in the county of __Mariposa__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 36 CFR 4.2 (b) CVC 4000 (a)(1) | Operating an unregistered vehicle |
| 36 CFR 4.23 (c)(2) | Refusal to submit to required breath test. |

This criminal complaint is based on these facts:

See affidavit attached hereto and incorporated by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Christopher Cassling Supervisory US Park Ranger
*Printed name and title*

Sworn to me in accordance with Fed.R.Crim.P. 4.1.

Date: 01/02/2024

_____
*Judge's signature*

Judge Helena Barch-Kuchta
*Printed name and title*

City and state: Yosemite, CA

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

## EXPERIENCE AND TRAINING OF THE AFFIANT

1. I, Christopher Cassling, further state, I am a Law Enforcement Officer ("Officer"), employed by the National Park Service ("NPS"). I have been an Officer with the NPS since 2013 and have worked as an Officer at Yosemite National Park, Lake Mead National Recreation Area, Cape Hatteras National Seashore, Lake Roosevelt National Recreation Area, and Sequoia National Park. I have also worked two internships with the Investigative Services Branch of the National Park Service based out of the Grand Canyon Field Office.

2. I had completed a Federal Law Enforcement Training Center accredited Seasonal Law Enforcement Training Program at Northern Arizona University in 2013 before going onto complete the Land Management Police Training program at the Federal Law Enforcement Training Center (FLETC) at Glynco, Georgia in July of 2017. After completing the training at FLETC I passed the Field Training and Evaluation Program at Cape Hatteras National Seashore.

3. I have completed two National Highway Traffic Safety Administration (NHTSA) Standardized Field Sobriety Testing (SFST) courses at the Law Enforcement Academies I've attended. I am also a NHTSA SFST Instructor and completed that training in 2020. I have made over 15 arrests of people driving under the influence of alcohol to a degree they were a danger to themselves or others.

4. The facts set forth in this affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation,

PAGE 1 OF 9

including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the issuance of a complaint and attendant arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## JURISDICTION

5. The facts set forth in this criminal complaint occurred on November 19th, 2023, within the geographic boundaries of Yosemite National Park, California. Yosemite National Park is an area of federally owned public land administered by the NPS. Yosemite National Park is an area of the special maritime and territorial jurisdiction of the United States as defined by Title 18 U.S.C. § 7 (3): "Special maritime and territorial jurisdiction of the United States defined" and by Title 16 U.S.C. § 57: "Yosemite and Sequoia National Parks; exclusive jurisdiction of United States."

6. Yosemite National Park is located within Mariposa, Madera, Mono and Tuolumne Counties, all of which are located within the Eastern District of California.

## CHARGES

7. Based upon the facts set forth in this criminal complaint, I believe probable cause existed to believe that MOKRANE "MIMOUN" violated the following laws of the United States on December 31st, 2023 within Yosemite National Park:

a. *36 CFR § 4.2 (b) CVC 4000(a)(1): A person shall not drive, move, or leave standing upon a highway, or in an offstreet public parking facility, any motor vehicle, trailer, semitrailer, pole or pipe dolly, or logging dolly, unless it is registered and the appropriate fees have been paid under this code or registered under the permanent trailer identification program, except that an off-highway motor vehicle which displays an identification plate or device issued by the department pursuant to Section 38010 may be driven, moved, or left standing in an offstreet public parking facility without being registered or paying registration fees.*

b. *36 CFR § 4.23 (c)(2): Refusal by an operator to submit to a test under paragraph (c)(1) is prohibited and proof of refusal may be admissible in any related judicial proceeding.*

## PROBABLE CAUSE

8. On December 31st, 2023 at approximately 2134 hours I was driving in a marked patrol vehicle heading East on Village Drive approaching intersection of Ahwahnee Drive and Village Drive (known as the Village Store Intersection) when I observed a white Toyota Corolla Sedan (CA:7PHZ540) heading towards the intersection from Ahwahnee Drive. The vehicle proceeded to make a left turn onto Village Drive directly in front of me as I was approaching the intersection. The vehicle cut the corner tight on the turn and went across the oncoming lane of travel before finishing the turn into the correct lane. I did not observe a turn signal at any point leading up to or during the performance of the turn. I turned behind the vehicle and started following it.

9. The vehicle approached the roundabout and after entering, immediately took the first exit, making a right hand turn into the Yosemite Village Parking Lot. At no point did I observe a right hand turn signal activate. The vehicle proceeded into the parking lot and slowed down.

PAGE 3 OF 9

10. I activated my overhead lights and the vehicle came to a stop in the parking lot and put on its hazard lights.

PERSONAL CONTACT

11. I immediately exited my vehicle and saw that the registration sticker on the rear license plate was showing expired in 2018. There was heavy tint on the windows, but with my stoplight on the rear window, it appeared that the subjects in the vehicle were moving around. I called for an additional unit to my location. I approached the vehicle and saw MIMOUN sitting in the drivers seat with his window fully rolled down. I immediately noticed that MIMOUN had glassy, bloodshot eyes. MIMOUN said he was heading to Curry Village and had been Bar-B-Q'ing before he started driving. I asked MIMOUN about the registration showing expired, and he said he took the registration sticker off because it was falling off. MIMOUN showed me a 2024 registration tab. The tab was thick and had multiple prior years of registration tabs beneath it. I could see the bottom sticker was a registration sticker from 2015. Based on my training and experience, people will steal registration tabs off other vehicles and apply them to their vehicles to give the appearance their unregistered vehicle is registered.

12. I asked MIMOUN for his drivers license, registration, and insurance. MIMOUN produced his proof of insurance. I was speaking with MIMOUN about his itinerary and where he was from and if he had any alcohol to drink tonight. MIMOUN stopped searching for the registration and drivers license and answered my questions. MIMOUN denied consuming any alcohol that night. I had to remind MIMOUN to attempt to locate his registration

PAGE 4 OF 9

paperwork when Officer Smith arrived on scene. I went back to my patrol vehicle and realized I did not have MIMOUN's drivers license, and I approached the vehicle and asked him for his drivers license. MIMOUN pulled out an alligator clip of cards and looked through them. I saw MIMOUN flip through he cards and go past his drivers license before stopping and flipping back to it and grabbing it.

13. I ran the vehicle registration though the Yosemite Emergency Communications Center and the vehicle registration returned expired as of 05/08/2021 and was registered to MIMOUN. Given the vehicle was registered to MIMOUN, had not been registered since 2021, was showing an expired 2018 registration sticker, and the bottom of the 2024 registration sticker he presented me was from 2015 indicating it did not come off that vehicle. It was probable that MIMOUN knew his vehicle was not registered and he was attempting to provide false information and pass off a different registration tab as his vehicles registration tab.

14. I approached the vehicle again and asked MIMOUN if he was able to find any registration paperwork. MIMOUN was unable to produce any registration paperwork. When he was talking he was looking at me and I could smell the odor of an alcoholic beverage emanating off his breath. I asked MIMOUN to step out of the vehicle.

## STANDARDIZED FIELD SOBRIETY TESTS

15. The Standardized Field Sobriety Tests (SFST) were performed on wet, level asphalt pavement of the Yosemite Village Parking Lot. MIMOUN denied being under the care of a doctor, on any medications, or having any injuries that would prevent him from walking in a straight line or standing on one leg.

16. The first test I administered to MIMOUN was the Horizontal Gaze Nystagmus (HGN) Test. I observed that his eyes were brown. MIMOUN's eyes had equal tracking, equal pupil size, and no resting nystagmus. While checking for that MIMOUN was moving his head to follow the stimulus. I had to remind MIMOUN to keep his head still and follow with his eyes only. During MIMOUN's performance of the HGN Test, I observed a total of 6 out of a possible 6 clues. According to NHTSA if you observe 4 or more clues it is likely the subject's Blood Alcohol Content (BAC) is at or above .08. I did not observe Vertical Nystagmus in either eye. While administering the test, I could smell the strong odor of an alcoholic beverage emanating off his breath.

17. For the Walk and Turn test I put MIMOUN in the starting position and explained he needed to remain there while I explained and demonstrated the test. I asked if he understood this and he responded "Of Course". While I was explaining the test, MIMOUN started to perform the test and took two steps forward before I had completed giving him instructions. I had to stop him from walking. MIMOUN was still in the correct starting position, so I continued with the instructions. I asked MIMOUN if he understood the instructions I provided and he said he did.

18. During the walking portion of the test, MIMOUN missed his first heel to toe step, used his arms for balance on his second set of 9 steps, and only took 8 steps on his second set of 9 steps he was supposed to take.

19. During MIMOUN's performance of the test I observed a total of 4 out of 8 clues. According to NHTSA if you observe 2 or more clues it is likely the subject's Blood Alcohol Content (BAC) is at or above .08.

20. During his performance of the One Leg Stand test MIMOUN chose to elevate his right foot. During his performance of the test MIMOUN skipped counting one thousand five and stopped counting in the manner described after one thousand twenty. During the performance of the test MIMOUN used his arm for balance twice. During MIMOUN's performance of the One Leg Stand, I observed a total of 1 out of a possible 4 clues. According to NHTSA if you observe 2 or more clues it is likely the subject's Blood Alcohol Content (BAC) is at or above .08.

21. I explained to MIMOUN that I could smell alcohol coming off his breath and that his performance on the tests indicated he had been consuming alcohol. MIMOUN denied consuming any alcohol. I asked MIMOUN if he would perform a preliminary breath test and went to retrieve the Alco-sensor preliminary breath test. I attempted to administer the preliminary breath test to MIMOUN and he put his lips up to the straw but did not provide a breath sample. I placed MIMOUN under arrest at approximately 2157 hours for operating a motor vehicle under the influence of alcohol to a degree that rendered him incapable of safe operation.

## REFUSAL OF EVIDENTARY BREATH TEST

22. I read MIMOUN the Required DUI Chemical Test Statue 36 CFR 4.23 (c)(2) form at 2213 hours. After reading the advisement, I asked MIMOUN if he had any questions and MIMOUN said he did not understand English very well and he did not understand what I was saying. Up till this point in the contact MIMOUN had not shown or told me he had any difficulty understanding what I was saying or asking him to do. I asked MIMOUN what his

PAGE 7 OF 9

native language was and he said it was Tamazight and his second language was French. I attempted to summarize and simplify the explanation of the advisement. MIMOUN then argued that he performed the tests, did not drink, did not damage anything or crash his car, and should not be placed under arrest, and then said he did not understand the advisement.

23. At approximately 2217 hours I presented the Drager 7510 Evidentiary Breath Test Instrument to MIMOUN and requested he provide a breath sample. MIMOUN protested that he was arrested for nothing, that he did not crash or damage anything, he passed the tests, and didn't drink or do drugs. I explained to MIMOUN multiple times he was under arrest for driving a vehicle under the influence of alcohol to a degree that he was incapable of safely operating the vehicle (DUI) and that he was required to provide a breath sample. MIMOUN continued to argue the same points he was making earlier. I asked MIMOUN if he was refusing to provide a breath sample. MIMOUN then stated he did not understand English very well, this was after engaging in a conversation with me and arguing the merits of his arrest. MIMOUN said he needed a lawyer to explain the test to him. Explained to him again he was required to provide a breath sample because he was under arrest for DUI. MIMOUN argued that he did not hit or damage anything, there was no alcohol in his car, and he passed the tests. I asked MIMOUN multiple times to provide a breath sample and he continued to argue with me. At 2224 hours I explained to MIMOUN this was his last chance and asked him if he would provide a breath sample. MIMOUN said "I can not blow". I explained to MIMOUN he would receive an additional charge for refusing to provide a breath sample. MIMOUN responded "Ok, whatever".

## CONCLUSION

24. Based on the forgoing facts of this affidavit, I believe probable cause existed for the arrest of MOKRANE MIMOUN based on his driving behavior, operating an unregistered vehicle, knowingly presenting a fictitious registration tab to an investigating official, the strong odor of an alcoholic beverage coming off his breath, his performance during the SFST's showing he was operating a motor vehicle under the influence of alcohol to a degree that rendered him incapable of safe operation, and his refusal to submit to required chemical breath test.

Respectfully submitted,

_[signature]_

Christopher Cassling
United States Park Ranger
National Park Service

January 2nd, 2024

Subscribed and sworn to before me on:

_[signature]_

Judge Helena Barch-Kuchta
The Honorable
United States Magistrate Judge
January 2nd, 2024

Approved as to form by:

/S/   _Jeffrey Spivak_
Jeffrey Spivak
Assistant United States Attorney
January 2nd, 2024